**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

IAN D. MCCALLA,

      Petitioner,

v.                                       Case No. 8:25-cv-2884-WFJ-SPF

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

Ian D. McCalla, a Florida prisoner, initiated this action by filing a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent filed a response opposing the petition. (Doc. 11). Mr. McCalla submitted a reply. (Doc. 23). After careful review, the petition is **DENIED**.

## I.    Background

In June 2018, the Sarasota County Sheriff's Office was monitoring "peer-to-peer" networks" for the distribution of child pornography. (Doc. 12-1, Ex. 5, at 177-78). On June 9, officers downloaded a "video containing child pornography" from an IP address in Sarasota County. (*Id.* at 183-85). Over the next few days, officers received additional child pornography from the same IP address. (*Id.* at 183). Law enforcement soon discovered that the IP address belonged to Mr. McCalla. (*Id.* at 185).

On June 15, a search warrant was executed at Mr. McCalla's residence. (*Id.* at 188-89). As the detective read the warrant to Mr. McCalla, he "interrupted" and said that he

had downloaded "Shareaza"—an internet filesharing program—and "then this child pornography just started popping up on his computer." (*Id.* at 192). Inside Mr. McCalla's bedroom was a desktop computer. (*Id.* at 201). After reading the warrant to Mr. McCalla, the detective entered the bedroom, moved the mouse or hit the "shift key," and found "[t]he Shareaza software running with child pornography on the screen." (*Id.*) Subsequent forensic examination of the computer uncovered at least forty videos containing child pornography. (*Id.* at 395-467). A user had downloaded the videos by entering sexually explicit search terms into Shareaza, including "Mommy and Daddy PTHC"[1] and "pedo mom." (*Id.* at 383-84).

From March 2018 until the search warrant was executed, Mr. McCalla shared his house with an elderly female roommate. (*Id.* at 244). Mr. McCalla initially allowed the roommate to use his desktop computer to "look for jobs." (*Id.* at 246). He did not give her the password to the computer. (*Id.*) Instead, he would "turn on [the] computer" and "access the internet" for her. (*Id.*) In June 2018, Mr. McCalla told his roommate that he was "worried about viruses" and no longer "want[ed] anybody on the computer at all." (*Id.* at 247). She never used his computer after this discussion. (*Id.* at 248). When the search warrant was executed, Mr. McCalla told his roommate that he had "viewed" child pornography for approximately twenty minutes and "was appalled by what he saw." (*Id.* at 250).

---

[1] At trial, a law enforcement witness testified that "PTHC" stands for "Preteen Hardcore." (Doc. 12-1, Ex. 5, at 379).

Mr. McCalla was charged with forty counts of possession of child pornography. (*Id.*, Ex. 4). The case went to trial. Mr. McCalla testified in his defense, claiming that he downloaded Shareaza after speaking to a police officer in a bar. (*Id.*, Ex. 5, at 510-11). The officer allegedly told Mr. McCalla that he could use Shareaza to download free copies of "big, multimillion dollar Hollywood movies." (*Id.* at 511). A few days after he installed Shareaza, Mr. McCalla was working on his motorcycle when a man approached him, said he was "from Frontier Communications," and offered to perform a "free upgrade[]" of his internet service. (*Id.* at 566). Mr. McCalla agreed, and the man placed a "black box" on his router. (*Id.* at 574-75). After Mr. McCalla was arrested and taken to the county jail, he allegedly encountered the same man in the "medical" unit. (*Id.* at 576-77). This time, the man was wearing a law enforcement uniform. (*Id.* at 577-78). Mr. McCalla said, "Wow, . . . Mr. Frontier, you work here." (*Id.* at 577). The man allegedly "went bright red in the face and immediately spun around and walked out."[2] (*Id.*)

Mr. McCalla was found guilty as charged, and he received a total sentence of thirty years' imprisonment. (Doc. 12-2, Exs. 7, 10). His conviction was affirmed on direct appeal in an unexplained decision. (*Id.*, Ex. 21). Mr. McCalla subsequently moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 12-3, Ex. 26). The postconviction court summarily denied all claims save one, which it set for an evidentiary hearing. (*Id.*, Exs. 27, 29). After the hearing, the court denied the sole

---

[2] Before Mr. McCalla testified about the Frontier incident, defense counsel informed the court during a bench conference that he believed this testimony would be "counterproductive to Mr. McCalla's case." (Doc. 12-1, Ex. 5, at 548). Mr. McCalla was nonetheless "adamant" about presenting the testimony, so the Court allowed him to testify in narrative form about the Frontier incident. (*Id.* at 549, 558-61).

remaining claim in a written order. (Doc. 12-4, Ex. 31). The appellate court affirmed without explanation. (*Id.*, Ex. 40). This federal habeas petition followed. (Doc. 1).

## II.     Standards of Review

### A.     AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The appellate court in Mr. McCalla's case affirmed his convictions, as well as the denial of postconviction relief, without discussion. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

## B.    Exhaustion of State Remedies; Procedural Default

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The

exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson*, 353 F.3d at 892.

### C. Ineffective Assistance of Counsel

Mr. McCalla alleges ineffective assistance of trial counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of

professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Mr. McCalla must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, Mr. McCalla must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation and citations omitted); *see also Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim—which is governed by the deferential *Strickland* test—through the lens of AEDPA deference, the resulting standard of review is doubly deferential."). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

### III.    Discussion

#### A.    Ground One—Failure to Seek Suppression Based on "Facially Insufficient" Search Warrant

According to Mr. McCalla, trial counsel should have moved to suppress the "computer evidence" on the ground that the search-warrant affidavit failed to establish probable cause for the search.[3] (Doc. 1 at 8-10). Had counsel raised this issue, the trial court allegedly would have "suppress[ed] the computer evidence" and "dismiss[ed] the case against" Mr. McCalla. (*Id.* at 10).

The postconviction court rejected this claim, finding that any motion to suppress for lack of probable cause would have been "meritless."[4] (Doc. 12-3, Ex. 27, at 5). As the court pointed out, the search-warrant affidavit noted that Mr. McCalla's computer "was offering to share, or was in possession of," "101[] unique containers/files/folders possessing [h]ash [v]alues previously identified as containers of child pornographic images and child erotica images." (*Id.* at 4; Doc. 12-4, Ex. 31, Attachment 1 at 16). Moreover, the affidavit "listed descriptive titles of many of the files to provide further weight to [the detective's] belief that the files depicted child pornography." (Doc. 12-3, Ex. 27, at 4). The court set forth a "sampling" of "illustrative titles included in the affidavit": "7yo sex in serial (Hussyfan

---

[3] Mr. McCalla also refers to this claim as "Ground 2AA." (Doc. 1 at 17).

[4] Before he filed his Rule 3.850 motion, Mr. McCalla raised the same ineffective-assistance claim on direct appeal. (Doc. 12-2, Ex. 17, at 44-55). That claim was rejected without explanation. (*Id.*, Ex. 21). Mr. McCalla reasserted the claim in his Rule 3.850 motion, the postconviction court rejected it in a reasoned decision, and the appellate court affirmed without explanation. (Doc. 12-3, Ex. 26, at 8-19; Doc. 12-3, Ex. 27, at 3-5; Doc. 12-4, Ex. 40). AEDPA requires this Court to "direct [its] analysis" to "the last reasoned decision by the state courts to consider [the] claim." *Ray v. Ala. Dep't of Corr.*, 809 F.3d 1202, 1209 (11th Cir. 2016). Here, the "last reasoned decision" is the postconviction court's order denying the Rule 3.850 motion. (Doc. 12-3, Ex. 27, at 3-5). It is to that decision that the Court must look in applying § 2254(d).

8

R@ygold] 6yo girl fucked~l.mpg"; "9Yo Arab Pedo Girl Fucked by Dad.avi"; "!!!NEW Pedofilia-8yr girl anal penetration – she fight the man and ask him to stop Kinderkutje Pthc Pedo Raygold Russian Preteens.mpg"; "Pthc Pedo – 11 Yo &13 Yo Girls Play with Mom-'s Pussy and Fuck Dad).avi"; and "3Yo(Recommendet.Mpeg." (*Id.*) Thus, the court found that the "information contained in the affidavit" gave "the magistrate . . . sufficient information to determine probable cause to support the issuance of a search warrant." (*Id.*) As a result, "defense counsel did not err in failing to move to suppress." (*Id.*)

This ruling was reasonable. "To obtain relief where an ineffective assistance claim is based on trial counsel's failure to file a timely motion to suppress, a petitioner must prove (1) that counsel's representation fell below an objective standard of reasonableness, (2) that the Fourth Amendment claim is meritorious, and (3) that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Zakrzewski v. McDonough*, 455 F.3d 1254, 1260 (11th Cir. 2006). Because Mr. McCalla's Fourth Amendment claim is meritless, counsel was not deficient for failing to raise it.

Mr. McCalla's claim turns on whether the search-warrant affidavit established probable cause for the search. "A sufficient basis for probable cause for a search exists when under the totality of the circumstances there is a fair probability that . . . evidence of a crime will be found in a particular place." *United States v. Lopez*, 649 F.3d 1222, 1245 (11th Cir. 2011). "A 'fair probability,' in turn[,] exists when the facts and circumstances would lead a reasonably prudent person to believe that the place to be searched contains . . . evidence of a crime." *Id.* "[P]robable cause is a fluid concept—turning on the assessment

9

of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983).

The information in the search-warrant affidavit established a "fair probability" that "evidence of a crime"—namely, possession of child pornography—would be found on Mr. McCalla's computer. *Lopez*, 649 F.3d at 1245. The affidavit noted that Mr. McCalla's computer contained over 100 files with hash values "previously identified as containers of child pornographic images and child erotica images." (Doc. 12-4, Ex. 31, Attachment 1 at 16). A "hash match between a suspect's files and known child pornography amply supports the reasonable inference that such material is present on the suspect's device[]." *United States v. Johnsen*, 176 F.4th 1208, 1215 (9th Cir. 2026); *see also, e.g.*, *United States v. Maher*, 120 F.4th 297, 322 (2d Cir. 2024) (noting that "the hash match of [an unviewed] image to one earlier identified . . . as depicting child pornography provide[s] strong probable cause" for a search warrant to view the file). Hash matching "is widely viewed as a reliable and scientifically sound means of identifying duplicates of a file," and Mr. McCalla "does not challenge the reliability of the Government's hashing methodology." *Johnsen*, 176 F.4th at 1215.

Additionally, "the hash matches were bolstered by substantial additional evidence that independently supported the . . . finding of probable cause." *Id.* at 1216. The affidavit "listed the filenames of files [on Mr. McCalla's computer], all of which were strongly indicative of explicit sexual content involving minors." *Id.* "[F]ilenames themselves, apart from their content[,] can give [a] judge probable cause to issue a search warrant." *Id.* (citation omitted); *see also United States v. Miknevich*, 638 F.3d 178, 184 (3d Cir. 2011)

10

("[T]he magistrate could have drawn a reasonable inference of the file's contents based on its highly descriptive name."); *United States v. McKinion*, No. 2:14-cr-124-CAS-1, 2017 WL 3137574, at *5 (C.D. Cal. July 21, 2017) ("Evidence that [the defendant] even attempted to download a large number of files with names describing sexual exploitation of children would lend support to a finding of probable cause.").

For these reasons, Mr. McCalla's proposed motion to suppress would have failed. Thus, counsel was not deficient for failing to pursue it. *See United States v. Curbelo*, 726 F.3d 1260, 1267 (11th Cir. 2013) ("[I]t goes without saying that counsel is not ineffective for failing to file a meritless suppression motion.").

**B.    Ground Two—Failure to Prove That "Persons Depicted Were Actual Children or Any Particular Age"**

According to Mr. McCalla, his due process rights were violated because the evidence at trial failed to prove that any videos recovered from his computer depicted "actual children" rather than "digital[ly] manipulated images." (Doc. 1 at 13; *see also* Doc. 23 at 5). Mr. McCalla also contends that "there was no evidence presented as to the age of the persons depicted." (Doc. 1 at 13). Thus, Mr. McCalla speculates that he may have been convicted for possessing "mere images produced without actual children" via "advanced computer techniques." (*Id.*)

Respondent argues that this claim is procedurally defaulted. (Doc. 11 at 18-19, 24). The Court need not decide that issue because, even assuming Mr. McCalla properly exhausted his state-court remedies, he cannot show that the rejection of Ground Two was "contrary to, or involved an unreasonable application of, clearly established Federal law,

11

as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see also Cook v. McNeil*, 266 F. App'x 843, 846 (11th Cir. 2008) (affirming denial of habeas petition because, "[e]ven if [petitioner] exhausted his due process claim," he could not "establish either that the state courts applied a standard contrary to federal law or that they applied that precedent in an unreasonable manner"); *Acosta v. Artuz*, 575 F.3d 177, 188-89 (2d Cir. 2009) ("Even if we were to assume that [petitioner] adequately exhausted state remedies on the precise challenge to the admission of his confession that he now raises in his habeas petition, we would agree with the district court that no relief is warranted because [he] has not demonstrated that the state court's rejection of his claim on the merits was an objectively unreasonable application of clearly established Supreme Court precedent.").

Under the Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), a court reviewing a challenge to the sufficiency of the evidence must evaluate whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. Under *Jackson*, the prosecution does not have "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." *Id.* at 326. If the record contains facts supporting conflicting inferences, the jury is presumed to have "resolved any such conflicts in favor of the prosecution." *Id.*

12

To convict Mr. McCalla of possession of child pornography, the prosecution needed to establish that "[t]he photograph, motion picture, image, or computer depiction included, in whole or in part, sexual conduct by a child less than 18 years of age." (Doc. 12-2, Ex. 8, at 410; *see also* Fla. Stat. § 827.071(5)(a)). Contrary to Mr. McCalla's assertion, however, "pornographic images [or videos] themselves are sufficient to prove the depiction of actual minors." *United States v. Bynum*, 604 F.3d 161, 166 (4th Cir. 2010). "In other words, the Government need not present any extrinsic evidence as to this issue, so long as the jury has had an opportunity—as it did here—to view the relevant images [or videos]." *Id.*; *see also United States v. Schram*, 128 F.4th 922, 926 (8th Cir. 2025) ("[W]e are not prepared to depart from our court's precedent allowing juries to decide whether images depict real children based on the images themselves."). Likewise, courts have "avoided requiring expert testimony in child pornography cases to establish an unidentified individual's status as a minor." *United States v. Dewitt*, 943 F.3d 1092, 1096 (7th Cir. 2019). These courts reason that "[j]urors are capable of drawing on their own perceptions to determine a subject's age because these types of assessments are regularly made in everyday life." *Id.*

Here, the jury viewed each of the forty videos charged in the information and found that all qualified as child pornography. (Doc. 12-1, Ex. 5, at 395-467; Doc. 12-2, Ex. 7). Moreover, the trial court denied Mr. McCalla's motion for a judgment of acquittal on this issue, finding that the prosecution "put sufficient evidence on for it to be a jury determination." (Doc. 12-1, Ex. 5, at 485, 490-92, 644). In its ruling, the court noted that one of the videos depicted what "appear[ed] to be . . . a prepubescent child." (*Id.* at 490). Mr. McCalla "points to no evidence in the record demonstrating that [the videos] were

13

anything other than what the Government contended they were: child pornography involving actual prepubescent children." *United States v. Pawlak*, 935 F.3d 337, 350 (5th Cir. 2019). Instead, Mr. McCalla simply speculates that the prosecution may have relied on "mere images produced without actual children." (Doc. 1 at 13). But the prosecution "need not produce evidence to negate a speculative assertion that a child in a [video] is virtual" or not actually a minor. *Schram*, 128 F.4th at 926. In short, the jury, "as the trier of fact in this case, was capable of reviewing the evidence to determine whether the Government met its burden to show that the [videos] depicted real children." *United States v. Slanina*, 359 F.3d 356, 357 (5th Cir. 2004). Thus, Mr. McCalla's sufficiency challenge fails.

###### C.    Ground Three—Failure to Prove "Knowing Possession" of Child Pornography

Mr. McCalla raises a separate sufficiency challenge: that the prosecution failed to prove his "knowing possession" of child pornography because "the computer in which the contraband was found . . . was shared and used by other individuals." (Doc. 1 at 15). According to Mr. McCalla, there was no evidence that he was "even in the home" when the videos were "downloaded over several days." (*Id.* at 15-16). Mr. McCalla also points out that the "Shareaza program started up on its own automatically at boot up," that "downloading continue[d] . . . even when the computer [was] not being actively used," and that the prosecution allegedly failed to show that "a user would know what was occurring in the background during use of the computer." (*Id.* at 15).

Respondent argues that this claim is procedurally defaulted, but the Court need not reach the issue because the sufficiency challenge fails on the merits. *See Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020) ("[A] federal court may skip over the procedural default analysis if a claim would fail on the merits in any event."). To convict Mr. McCalla, the prosecution needed to prove that he "knowingly possess[ed] . . . picture[s], movie[s], or other presentation[s] which [he] kn[ew] to include sexual conduct by a child." *Bussell v. State*, 66 So. 3d 1059, 1061 (Fla. 1st DCA 2011). "A person searching for child pornography and having it on his computer is strong evidence that the person knowingly possessed child pornography." *United States v. Morris*, No. 22-12149, 2024 WL 3566707, at *2 (11th Cir. July 29, 2024) (collecting cases).

Here, law enforcement located child pornography on a desktop computer in Mr. McCalla's bedroom. (Doc. 12-1, Ex. 5, at 395-467). All forty videos were downloaded by entering sexually explicit search terms into Shareaza, including "Mommy and Daddy PTHC" and "pedo mom." (*Id.* at 383-84). Moreover, the prosecution showed that at least thirty-seven of the videos were not only downloaded but viewed on the computer. (*Id.* at 395-467). The jury also learned about activity on the computer before and after the downloads and views. For example, at 4:24 p.m. on June 11, 2018, a user viewed a video titled "Chinese Boy 11Yo Boy Raped by Man On Bed." (*Id.* at 444-45). "[J]ust prior to that," the user had accessed "Ian McCalla['s]" Facebook account using Mr. McCalla's "known [email] address." (*Id.* at 445). Similarly, on June 13, eight minutes after viewing a video titled "Pedo Boy – Man Fuck And Rape Preteen Boys Really Deep Enter," the user accessed Mr. McCalla's account on "Plenty of Fish"—a dating website. (*Id.* at 433). In

15

addition to the evidence of computer activity, the prosecution presented testimony from Mr. McCalla's roommate, who stated that Mr. McCalla admitted to viewing child pornography for approximately twenty minutes. (*Id.* at 250). Viewed in the light most favorable to the prosecution, this evidence was sufficient to prove that Mr. McCalla "knowingly possessed child pornography." *Morris*, 2024 WL 3566707, at *2.

To be sure, before June 2018 Mr. McCalla's roommate occasionally used his computer to "look for jobs." (Doc. 12-1, Ex. 5, at 246). But the videos for which Mr. McCalla was charged were all downloaded in June 2018, and by that time Mr. McCalla had forbidden his roommate from using the computer. (*Id.* at 247-48, 395-467). Moreover, the roommate testified that Mr. McCalla locked "the door to his bedroom" when he was away. (*Id.* at 247). Mr. McCalla's "defense that another person with access to the computer was the perpetrator was, at best, an alternative interpretation of the trial evidence that the jury was free to reject." *United States v. Dixon*, 589 F. App'x 427, 429 (11th Cir. 2014). In light of "all of the evidence recounted above, a reasonable jury readily could have found [Mr. McCalla] guilty beyond a reasonable doubt even though the Government failed to disprove definitively the possibility that [another individual] who had access to the residence and his computer might have downloaded child pornography." *Id.*; *see also Bussell*, 66 So. 3d at 1062 ("[T]he State put forth circumstantial evidence from which the jury could infer that Appellant was the person who downloaded the child pornography onto the family computer.").

### D.      Ground Four—Prosecutorial Misconduct

Mr. McCalla contends that the prosecution violated the constitution by making improper remarks during closing argument. (Doc. 1 at 21). For example, he accuses the prosecution of telling the jury to "discount [his] testimony because he was the only person in the room with an interest in the outcome of the case." (*Id.*) According to Mr. McCalla, the prosecution also engaged in misconduct by stating that his defense was based on "outlandish theories" and "conspiracy theories." (Doc. 12-2, Ex. 17, at 60).

Respondent correctly maintains that this claim is procedurally defaulted. (Doc. 11 at 31-32). In Florida, a claim must be preserved for review in the trial court before it may be raised on appeal. *See Tillman v. State*, 471 So.2d 32, 35 (Fla. 1985) ("In order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved."). The contemporaneous-objection rule applies to claims of prosecutorial misconduct. *See Garcia v. State*, 644 So. 2d 59, 62 (Fla. 1994) ("Although [defendant's] appellate counsel strenuously denounced the prosecutor's closing statements at oral argument before this Court, we find that the claims concerning the statements [defendant] finds most objectionable are procedurally barred for lack of a contemporaneous objection.").

Mr. McCalla did not object to any of the challenged remarks during closing argument. (Doc. 12-1, Ex. 5, at 647-67, 679-83). Instead, he raised his prosecutorial-misconduct claim for the first time on direct appeal. (Doc. 12-2, Ex. 17, at 60-63). In his appellate brief, Mr. McCalla appeared to concede that the issue was unpreserved, arguing

17

that "fundamental error can override the failure of defense counsel to make timely objections." (*Id.* at 63). Likewise, the prosecution argued that Mr. McCalla did not preserve the issue because he "failed to object to any statement made by the prosecutor." (*Id.*, Ex. 18, at 34-35). The appellate court affirmed in an unexplained decision. (*Id.*, Ex. 21). This Court must presume that the affirmance rested on the procedural bar asserted in the prosecution's brief. *See Zeigler v. Crosby*, 345 F.3d 1300, 1310 (11th Cir. 2003) ("[W]hen a state court issues a summary denial on a claim that is procedurally barred and nothing in the disposition discusses the merits of the federal claim, we cannot assume that had the state court explained its reasoning, it would have reached the merits of the claim."); *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993) ("[W]e may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits of the case."); *Bennett v. Fortner*, 863 F.2d 804, 807 (11th Cir. 1989) ("This circuit to a point has presumed that when a procedural default is asserted on appeal and the state appellate court has not clearly indicated that in affirming it is reaching the merits, the state court's opinion is based on the procedural default.").[5]

---

[5] *See also Henderson v. Sec'y of the Dep't of Corr.*, No. 3:19-cv-422-LC-HTC, 2021 WL 5142791, at *8 (N.D. Fla. July 1, 2021) ("The State argued on appeal that Petitioner failed to preserve this issue for appeal. Although the appellate court did not issue a written opinion, a federal district court on habeas review should presume the appellate court applied the procedural rule in denying relief."), *adopted by* 2021 WL 5143899 (N.D. Fla. Nov. 4, 2021); *Russell v. Sec'y, Dep't of Corr.*, No. 8:16-cv-493-WFJ-AAS, 2021 WL 289053, at *4 (M.D. Fla. Jan. 28, 2021) ("While [petitioner] did argue the Confrontation Clause on direct appeal, the State asserted this argument was not preserved for review. The appellate court then affirmed without opinion. That silent affirmance is presumed to rest on the procedural default, thus barring this Court from now considering the merits of [petitioner's] claim.").

The resolution of this claim on state procedural grounds resulted in a procedural default, and the claim is barred from federal habeas review unless Mr. McCalla establishes either cause and prejudice for the default or a fundamental miscarriage of justice. *See Harris v. Reed*, 489 U.S. 255, 262 (1989) ("[A]n adequate and independent finding of procedural default [by the state court] will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice."). He has not done so. Thus, Mr. McCalla's claim of prosecutorial misconduct is barred from review.[6]

### E.   Ground Five—Failure to Argue That "No Signed Search Warrant Ever Existed"

Lastly, Mr. McCalla argues that trial counsel should have moved to suppress the evidence from his computer on the ground that law enforcement failed to obtain a "signed search warrant."[7] (Doc. 1 at 24). After an evidentiary hearing, the postconviction court rejected Mr. McCalla's claim in a written order. (Doc. 12-4, Ex. 31). In its order, the court summarized the testimony it had received from Detective Eric Ellis and Mr. McCalla. (*Id.* at 1-3). Detective Ellis explained that "he submitted a search warrant for [Mr. McCalla's] home . . . via an electronic warrant system called 'e-Warrants.'" (*Id.* at 1). A copy of the "Search Warrant Affidavit & Application" was admitted into evidence. (*Id.* at 1-2). On

---

[6] Even if the claim were not procedurally defaulted, it would fail on the merits for the reasons ably explained by Respondent. (Doc. 11 at 33-38).

[7] Mr. McCalla also refers to this claim as "Ground 1AA." (Doc. 1 at 17).

June 14, 2018, Detective Ellis received an "automated email from the e-Warrants system notifying him that" the warrant had "been signed" by a judge. (*Id.* at 2). The "e-Warrants email" was admitted into evidence as a "public record." (*Id.*) Detective Ellis testified that "the warrant admitted into evidence at the evidentiary hearing was an identical copy of the warrant that was submitted and signed by the judge in [Mr. McCalla's] case." (*Id.*)

According to Detective Ellis, "he printed the signed warrant and served it upon [Mr. McCalla] on June 15, 2018." (*Id.*) Detective Ellis stated that he "read the complete document to [Mr. McCalla] and provided him with a copy." (*Id.*) The "case agent was responsible for returning the original signed and served warrant back to the clerk's office within 10 days." (*Id.*) Detective Ellis "believe[d] this process was followed," but he was ultimately unable to locate "the original signed warrant in either the Sheriff's Office's records or the court clerk's files." (*Id.*)

As the court explained, Mr. McCalla testified at the hearing that he too was unable to locate a "signed copy of the warrant." (*Id.* at 2-3). But Mr. McCalla "did not testify that he did not have the warrant read, *in toto*, to him at the time the warrant was served, nor did he claim that he did not receive a copy of the signed warrant at that time." (*Id.* at 3). Furthermore, Mr. McCalla "did not present any evidence to contradict Detective Ellis's testimony that law enforcement obtained a warrant or that the warrant produced at the hearing was an exact, unsigned duplicate of the warrant approved by a judge via e-Warrants." (*Id.*) And Mr. McCalla did not contend that "the loss of the original warrant tainted the evidence obtained during the search, nor [did] he challenge the authenticity of the duplicate unsigned warrant." (*Id.*) Instead, the court pointed out, Mr. McCalla "solely

20

argue[d] for suppression based upon the State's inability to produce the original signed warrant." (*Id.*)

After summarizing the hearing testimony, the court held that Mr. McCalla's "proposed motion to suppress . . . for lack of a signed copy of the search warrant would not have resulted in the exclusion of the evidence seized during [the] search." (*Id.* at 4). The court explained that, although neither side could not locate the "original signed warrant," the State had "presented sufficient secondary evidence" to prove that the warrant "was duly authorized by a magistrate through the e-Warrants system on June 14, 2018." (*Id.* at 3). Thus, all "constitutionally required . . . procedures were followed in obtaining a validly executed search warrant." (*Id.*) According to the court, the State's "subsequent inability to produce the original signed warrant ha[d] no effect upon the constitutional imperatives for its issuance and [did] not diminish the reliability of the evidence seized." (*Id.* at 4). Based on these findings, the court ruled that a suppression motion would not have been "successful," which meant that Mr. McCalla could not "establish that he was prejudiced by [the] failure to file [the] motion to suppress." (*Id.*)

This ruling was reasonable. The "absence of a search warrant at a suppression hearing" does not "create[] a presumption that there is a Fourth Amendment violation." *United States v. Pratt*, 438 F.3d 1264, 1270 (11th Cir. 2006). When a signed search warrant is lost, "other evidence of [the] warrant's existence and descriptive language may be used in a suppression hearing to prove that a search was conducted with a warrant that particularly described the place to be searched and the persons or items to be seized." *Id.*; *see also Commonwealth v. Ocasio*, 746 N.E.2d 469, 475 (Mass. 2001) (noting that several

21

states "have permitted secondary evidence to establish both the existence and material terms of lost or misplaced warrants" (collecting cases)); *cf. United States v. Lambert,* 887 F.2d 1568, 1571-72 (11th Cir. 1989) ("[T]he absence from the court records of an affidavit constitutes some evidence that one did not exist. . . . However, other evidence may be presented to establish the fact that an affidavit was presented, as well as its contents."). In such cases, "the Court's sole inquiry should be to determine whether the search warrant was reviewed and issued by an appropriate judicial authority upon an examination of all relevant and credible evidence." *United States v. Martin*, No. 8:10-cr-305-VMC-AEP, 2011 WL 722969, at *5 (M.D. Fla. Feb. 7, 2011), *adopted by* 2011 WL 719173 (M.D. Fla. Feb. 23, 2011).

Here, a reasonable jurist could agree that the State "presented sufficient secondary evidence" to establish that law enforcement obtained a signed search warrant before entering Mr. McCalla's house. (Doc. 12-4, Ex. 31, at 3). Detective Ellis submitted the warrant application to the e-Warrants system, and the day before the search, he received an "automated email from the e-Warrants system notifying him that" the warrant had "been signed" by a judge. (Doc. 12-4, Ex. 31, at 1-2). This email was made part of the state postconviction record. (*Id.* at 2). According to Detective Ellis, he "printed the signed warrant" and served it on Mr. McCalla during the search. (*Id.*) Furthermore, Detective Ellis stated that "the warrant admitted into evidence at the evidentiary hearing was an identical copy of the warrant that was submitted and signed by the judge in [Mr. McCalla's] case." (*Id.*) On this record, a fairminded jurist could conclude that "the search warrant was reviewed and issued by an appropriate judicial authority." *Martin*, 2011 WL 722969, at *5.

Thus, Mr. McCalla suffered no prejudice because a motion disputing the existence of the search warrant would have failed.[8] *See United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) ("[A] lawyer's failure to preserve a meritless issue plainly cannot prejudice a client.").

## IV.     Conclusion

Accordingly, the Court **ORDERS**:

1.  Mr. McCalla's petition (Doc. 1) is **DENIED**.

2.  The **CLERK** is directed to enter judgment against Mr. McCalla and to **CLOSE** this case.

3.  Mr. McCalla is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, Mr. McCalla must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v.*

---

[8] In addition to the claims discussed above, Mr. McCalla's petition refers to two other grounds that were raised in his Rule 3.850 motion. (Doc. 1 at 18). The postconviction court rejected these claims, but Mr. McCalla did not challenge their denial on appeal. (Doc. 12-3, Ex. 27, at 5-9; Doc. 12-4, Exs. 37, 39). As Respondent points out, it appears that Mr. McCalla "was simply listing grounds he pursued in state court and did not mean these as additional grounds he wished this Court to review." (Doc. 11 at 13 n.2). But even if he had intended to raise these claims, they would be dismissed as procedurally defaulted because Mr. McCalla did not brief them on appeal from the denial of his Rule 3.850 motion. *See Holloman v. Sec'y, Dep't of Corr.*, No. 8:19-cv-2953-CEH-SPF, 2023 WL 2570048, at *4 (M.D. Fla. Mar. 20, 2023) ("When at least one postconviction claim is resolved after an evidentiary hearing, an appellant must brief all claims he wishes the appellate court to review, including those claims denied without a hearing."). Mr. McCalla offers no basis to excuse the default. Therefore, these claims could not be reviewed on federal habeas even if he had intended to raise them.

*McDaniel*, 529 U.S. 473, 484 (2000). Mr. McCalla has not made the requisite showing. Because Mr. McCalla is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on June 23, 2026.

_____
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**